[Civ. No. 6830.   Third Dist.   Apr. 16, 1943.]

CHARLES McFALL, Appellant, v. CAROLYN FLA-
HERTY McFALL, Respondent.

Blewett & Blewett, Robt. N. Blewett and Stephen N. Blewett for Appellant.

Gumpert & Mazzera and Geo. K. Smith for Respondent.

PEEK, J.—Plaintiff and cross-defendant appeals from a judgment granting an interlocutory decree of divorce to defendant and cross-complainant on the ground of extreme cruelty.

Plaintiff and defendant were married on June 29, 1929, and lived together as husband and wife, except for a few days separation in May, 1940, until June 22, 1940. There are two children, the issue of said marriage, a son aged ten years and a daughter aged six years.

At the time of the separation and for approximately three years prior thereto plaintiff had operated a service station at San Andreas. It appears that this business venture marked the beginning of a series of domestic quarrels which ultimately culminated in the present divorce action. The wife testified that they were in debt and that they had agreed that if she were working at the station it would aid in the solution of this problem. The husband, to the contrary, testified that he objected to his wife working at the station but that she continued nevertheless, and that because of the wife's

activities in this regard it was necessary to hire girls to care for their two children, which was the source of other quarrels. Also it was during this unfortunate period that plaintiff and defendant rented a home next door to the person who was destined to become the main source of discussion and quarrels between them. The unhappy result of the friendship between defendant and this neighbor was an abiding conviction in the mind of the plaintiff that this acquaintanceship, at least insofar as defendant was concerned, was neither platonic nor maternal, and became a source of much defamatory comment by plaintiff, not alone to defendant, but to patrons of their oil station.

Plaintiff, by his complaint, and defendant by her cross-complaint, allege extreme cruelty in general terms. The defendant bases her allegations upon a course of conduct on the part of plaintiff existing throughout the two year period immediately preceding the final separation of the parties.

Upon the conclusion of the hearing the trial court awarded the custody of the minor daughter to the mother and the custody of the minor son to the father. The community property was equitably divided between the parties.

On the issue of extreme cruelty the trial court made certain findings, and in particular found that plaintiff wilfully and wrongfully inflicted grievous mental suffering and anguish and bodily injury upon defendant; that plaintiff had, on numerous occasions, accused defendant of having illicit relations with a man other than plaintiff; had quarreled with defendant concerning their own sex relationship, and had in this connection degraded and cheapened defendant; that plaintiff had told persons other than defendant of defendant's alleged infidelity; that plaintiff had forbidden defendant to keep company with her friends or to bring her friends to their home; that on the 27th day of May, 1940, the plaintiff violently struck defendant in the face with his fist and defendant was knocked to the floor and rendered unconscious, and that defendant's face was bruised and swollen for several days following this assault.

The plaintiff, appellant herein, makes no complaint in regard to division of the property by the court, nor does he allege error in the order of the court awarding the custody of the children. Plaintiff's appeal is predicated solely on the contention that the evidence is insufficient to support the finding on the issue of extreme cruelty, and further asserts

that no corroboration in support of material facts introduced on behalf of defendant appears in the record.

Extreme cruelty as a ground for divorce is defined in section 94 of the Civil Code as "the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage." This section neither sharply defines nor definitely limits the phrase "extreme cruelty" but merely describes it in general terms, leaving a wide range of discretion with the trial court. (*Andrews* v. *Andrews*, 120 Cal. 184 [52 P. 298].) Nor is there any well defined rule which may be followed as a test in determining the question as to whether or not certain acts or conduct constitute extreme cruelty. Each case must be determined according to its own particular circumstances, by the good sense and judgment of the court, keeping always in view the intelligence, apparent refinement and delicacy of sentiment of the complaining party. (*Fleming* v. *Fleming*, 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124]; *Scheibe* v. *Scheibe*, 57 Cal.App.2d 336 [134 P.2d 835].)

In *Shaw* v. *Shaw*, 122 Cal. App. 172 [9 P.2d 876], the judgment granting a divorce on the ground of extreme cruelty, upon circumstances somewhat similar to those presented in the instant case, was affirmed on appeal, and the language employed in the opinion of the court might well apply to the present case. In the Shaw case, the wife who was separated from her husband, an officer in the United States Navy, directed two letters to the Navy Department, falsely charging her husband of withholding information as to the whereabouts of their children, failure to send payments for her support, and immoral conduct with his housekeeper who kept house for the husband and the children. On page 174 of the opinion the following language appears in answer to the contention that the above conduct on the part of the wife did not constitute extreme cruelty:

"It is well settled that 'no arbitrary rule of law can be laid down as to what particular facts must be alleged and proven in order to justify a finding that the complaining party has suffered grievous bodily injury or has undergone grievous mental suffering. A correct decision must always depend upon the sound sense and judgment of the trial court. "Whether in any given case there has been inflicted grievous bodily injury, is a question of fact to be deduced from all the circumstances of each particular case, keeping always in

mind the intelligence, apparent refinement and delicacy of sentiment of the complaining party.'' [Citing cases.] Therefore, in the case at bar, whether or not the acts and conduct of appellant inflicted grievous mental suffering, or grievous bodily injury, or both, upon the respondent, was a question of fact for the determination of the trial court from all the facts and circumstances in the case.' ''

Again, at page 175 of the opinion, the court declares that the determination of the question as to whether defamatory accusations constitute extreme cruelty depends upon the manner in which the complaining spouse is affected. That language is as follows:

''Appellant insists that because there is no evidence that the children or others believed in the truth of these insinuations and because the naval authorities took no disciplinary action in the matter the statement and letters did not inflict extreme mental cruelty. Although the belief by others of the truth of such accusations probably would, if known to the respondent, have accentuated his mental suffering, it is not essential, for in determining whether or not defamatory accusations constitute extreme cruelty the test must be their effect upon the complaining spouse rather than their ·effect upon others.

''We cannot say that the trial court who had the opportunity of observing the delicacy of sentiment and apparent refinement of respondent acted in abuse of a sound discretion in determining that the conduct of appellant constituted extreme cruelty and inflicted grievous mental suffering upon him within the meaning of section 94 of the Civil Code.''

Considering the entire course of conduct on the part of plaintiff as shown by the evidence during the two year period preceding the final separation of the parties, it is beyond the province of this court to declare that the trial judge has acted in abuse of his sound discretion in determining that such conduct constituted extreme cruelty. Although specific acts on the part of plaintiff are necessarily relied upon in support of and as constituting to some degree the alleged wrongful conduct complained of, the trial judge in making his decision was not confined to any one specific act of alleged cruelty. The defendant did not rely on any one single act of cruelty, but relied upon a continuing course of conduct made up of various acts concerning which testimony was introduced.

Plaintiff seriously and at length contends that the

judgment should be reversed in that only "one act of battery and accusations of misconduct" are disclosed by the record; that such a showing is insufficient to substantiate a finding of extreme cruelty, and that ill-treatment by a husband must be "so unusual as to be beyond . . . the ordinary weaknesses and passions of men." (*Andrews* v. *Andrews, supra*). Such might be the case were it not for the fact that the evidence as a whole was found by the trial court to be amply sufficient to support the judgment. Secondly, plaintiff fails to consider the entire statement of the principle in the Andrews case, which of itself completely answers his contention. The complete statement including the partial quotation by plaintiff is found on page 187 of the volume cited, and is as follows:

"The general contention that the evidence and the facts found do not constitute, in law, extreme cruelty, within the meaning of the code, cannot be maintained. There is no attempt in the code to sharply define or to make definite limitations of the phrase 'extreme cruelty.' It is merely described in general terms to be 'the inflection of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage.' This leaves a wide range of discretion in a trial court to the judge or jury. It is now established law that the infliction of grievous mental suffering, independent of physical injury, may constitute extreme cruelty. (*Barnes* v. *Barnes*, 95 Cal. 171 [30 P. 298, 16 L.R.A. 660]; *Smith* v. *Smith, supra* [119 Cal. 183 (48 P. 730, 51 P. 183)]; *Fleming* v. *Fleming*, 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124]; *Venzke* v. *Venzke*, 94 Cal. 225 [29 P. 499].) Whether in any particular case the ill-treatment of the wife by the husband is so unusual as to be beyond that misconduct which may be attributed to the ordinary weaknesses and passions of men, and whether such treatment caused grievous mental suffering to the wife, are largely questions of fact to be determined by the trial court. Its findings on such questions cannot be disturbed on appeal unless the evidence in support of the findings be so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court."

It is evident from the authorities cited that the trial judge is vested with great latitude in determining the weight and sufficiency of all evidence presented to him in an action of such character as the present one. The parties and the witnesses were before him and he was in the best position to judge their credibility and determine their motives. The trial judge's findings and conclusions in a contested action

of this type, and in which much of the evidence is in conflict, should prevail unless there is a clear showing of an abuse of discretion.

Although defendant was admittedly a good friend of the next door neighbor, such fact clearly does not support the conclusions of plaintiff insofar as justifying his conduct toward her. It is true that defendant had visited in this neighbor's home, had received one or two small gifts from him under innocent circumstances, and one occasion after a dance, had used his car to drive a girl friend home, but incidents such as these certainly do not form a sound basis in support of plaintiff's suspicions and accusations of infidelity on the part of defendant.

During the time that defendant worked at the service station with plaintiff, she frequently was given a ride to work by the neighbor in his automobile. This circumstance is cited by plaintiff as another incident justifying his suspicions. However, the defendant testified that the plaintiff approved, and there is no evidence in the record to the contrary.

The plaintiff, by his own admission, had for a considerable period of time prior to the separation of the parties, accused his wife of infidelity, even to a point of discussing it with other persons in the community. Human nature and gossip being what they are, it is not unreasonable to assume that many others had knowledge of the accusations. The test, however, is the effect upon the complaining spouse, not necessarily the effect upon others, even though believed by them as stated in *Shaw* v. *Shaw, supra.* The trial judge had the parties before him with the evident opportunity to observe the effect of such accusations and conduct upon defendant. He has seen fit to resolve such questions of fact in her favor. Under such circumstances we cannot say that he acted in abuse of a sound discretion, and it is our opinion that we would be unwarranted in so holding.

A final and abundant source of argument has been found by both parties in the fact that the trial judge, during the course of the trial and after agreement between both counsel, conversed with the two minor children in his chambers. Even assuming that the defendant would be entitled to a presumption that the statements of the children were in support of the findings and judgment it is nevertheless unnecessary to further consider the question, as the record otherwise contains substantial evidence to support the allegations of ex-

treme cruelty and the findings and judgment of the court in accordance therewith.

There is no merit in the contention of plaintiff that there is not sufficient corroboration of material evidence. The plaintiff, by his own admissions, corroborated the testimony of defendant in some of the more important particulars. In 9 Cal.Jur. 738, section 96, the satisfaction of the rule requiring corroboration in such a case as the present one is well stated as follows:

"Where the cruelty consists of successive acts, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff; but it is sufficient corroboration if a considerable number of important and material facts are so testified to by other witnesses, or if there is other evidence, circumstantial or direct, which strongly tends to strengthen and confirm the statements of the plaintiff."

As clearly indicated, the record contains sufficient corroboration of the necessary material allegations contained in the cross-complaint of defendant.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1943.